**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| V. ) | Criminal Action No. 15-00285-KD-B |
| ) | |
| JEFFREY DEAN COBLE, ) | |
| ) | |
| **Defendant.** ) | |

### ORDER

This action is before the Court on Defendant Jeffrey Dean Coble's *pro se* Motion for Disqualification pursuant to 28 U.S.C. § 144 and § 455(a) and Affidavit (docs. 70, 70-1). Upon consideration, and for the reasons set forth herein the Motion is DENIED.

I. Procedural background

Coble was indicted for the offense of receiving and distributing material that contained child pornography (doc. 15). In calculating Coble's sentencing guideline range, the Probation Office applied U.S.S.G. § 2G2.2 with four enhancements (doc. 19, Sentencing Guideline Worksheet). As a result, Coble's adjusted offense level was 36. With a criminal history category of I and a deduction of three levels for acceptance of responsibility, his total offense level was calculated to be 33 and his lowest sentencing guidelines range was 135-168 months. (Id.) Counsel for Coble later filed the Certification Regarding the Preliminary Guideline Calculations of the Probation Officer wherein he certified that the preliminary calculations had been reviewed and discussed with Coble (doc. 20). Coble was advised that the preliminary calculations were not binding on the Court and that the final calculations might be different. (Id., p. 2).

Coble filed a notice of intent to plead guilty along with a plea agreement with a factual resume (docs. 21, 23). The change of plea hearing was held on February 22, 2016 (doc. 24), and

Coble was informed that he was facing a sentence of five to twenty years. Coble's sentencing date was set for May 26, 2016. The Probation Office then prepared a draft Presentence Investigation Report (PSIR). The Probation Office applied U.S.S.G. § 2G2.2 and only three enhancements. Coble's total offense level was calculated as 31. With a criminal history category of I, his sentencing guidelines range was 108 to 135 months (doc. 25, Draft PSIR, April 14, 2016).

On May 26, 2016, the day of sentencing, the Court, having reviewed the Final PSIR, held an in chambers conference with counsel without Coble's presence. After the conference, the Court stated in open court, that "[u]pon review of the presentence investigation, I have determined that the guidelines have been incorrectly calculated. There is information that I have and that was admitted to in the factual resume that has not been included" in the Final PSIR (Doc. 67, p. 2). The Probation Office was instructed to re-calculate the Final PSIR, the sentencing hearing was continued until June 30, 2016, and Coble was given an opportunity to object to the recalculated guidelines.

Later that day, the Probation Office docketed the revised Final Presentence Investigation Report (doc. 28). The Probation Office indicated that the "guideline for 18 U.S.C. § 2252A(a)(2) offenses is found at U.S.S.G. § 2G2.2(a)(2) of the guidelines. Pursuant to U.S.S.G. § 2G2.2(c)(1) "if the offense involved causing, transporting, permitting, or offering or seeking by notice of advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" then § 2G2.1 would apply. As a result of the cross-reference from § 2G2.2 to § 2G2.1, Coble's total offense level increased to 35. (Id.) With a criminal history category of I, his sentencing guidelines range increased to 168 to 210 months. (Id.)

Coble and the United States both filed objections to the revised PSIR. Coble objected to the application of the cross-reference provision (docs. 36, 40 (sealed)). The United States objected that there were two specific offense characteristics[1] relevant to the guideline calculation - the age of the victims and Coble's relationship to them - as to which the United States would present testimony at sentencing. (doc. 37).

The sentencing hearing was held June 30, 2016 (doc. 63, Sentencing Transcript). The Court overruled Coble's objection to the application of the cross-reference provision.[2] The Court sustained the United States' objection to the PSIR that six levels should be added (doc. 37, doc. 63, p. 6). As a result, the Court recalculated Coble's total offense level as 40 (doc. 63, p. 6-8). With a criminal history category of I, his sentencing guidelines range increased to 292 to 365 months. However, Coble was subject to the statutory maximum of 240 months. Therefore, the

---

[1] "Specific Offense Characteristics (1) If the offense involved a minor who had (A) not attained the age of twelve years, increase by 4 levels[.]" U.S.S.G. § 2G2.1(b)(1)(A). "Specific Offense Characteristics (5) If the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels." U.S.S.G. § 2G2.1(b)(5).

[2] Coble argued that the offense conduct did not involve "sexually explicit conduct" as defined in 18 U.S.C. § 2256(2)(A) and therefore the cross-reference from U.S.S.G. § 2G2.2 to § 2G2.1 was improper (doc. 36). Coble pointed out that there were no images or depictions of the alleged sexually explicit conduct. He argued that his uncorroborated statement or confession and his judicial admission in the factual resume that sexually explicit depictions were made were not enough for the Court to determine that the alleged depictions constituted "lascivious exhibition of the genitals or pubic areas" (doc. 40) (*see* 18 U.S.C. § 2256(2)(A)(v)). The Court overruled the objection upon finding that the admitted conduct was sufficient to establish that the depictions or images constituted lascivious conduct and therefore, the cross-reference to § 2G2.1 was appropriately applied. (Doc. 63, p. 5).

statutory maximum became the sentencing guideline range (doc. 63, p. 8). Coble was sentenced to 240 months (doc. 41, Judgment).[3]

In 2017, Coble filed a motion to vacate pursuant to 28 U.S.C. § 2255, which is pending before the undersigned (doc. 54). Coble now moves pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455 to disqualify the Court and for a different judge to review his motion to vacate.

II. Coble's motion pursuant to 28 U.S.C. § 144

Title 28 U.S.C. § 144, captioned "Bias or prejudice of judge", provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

"Judges must recuse themselves when they are personally biased or prejudiced against a party or in favor of an adverse party." *Klayman v. City Pages*, 650 Fed. Appx. 744, 748 (11th Cir. 2016) (citing 28 U.S.C. § 144). "Disqualification under § 144 requires that a party file an affidavit demonstrating the judge's personal bias or prejudice against that party or in favor of an adverse party." *United States v. State of Alabama*, 828 F.2d 1532, 1540 (11th Cir. 1987) (superseded by statute on other grounds, as recognized in *Lussier v. Dugger*, 904 F.2d 661, 664

---

[3] On July 13, 2016, the Court modified the section of the judgment wherein certain recommendations were made to the Federal Bureau of Prisons with respect to Coble's contact with the minor victims (doc. 45, Amended Judgment).

4

(11th Cir.1990)); *Dae Eek Cho v. United States*, 687 Fed. Appx. 833, 839 (11th Cir. 2017) ("Relief pursuant to 28 U.S.C. § 144 requires an affidavit, which must 'state the facts and the reasons for the belief that bias or prejudice exists.'"). "'To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists.'" *Klayman,* 605 Fed. Appx. at 748 (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)).

Also, the "statute mandates that the affidavit be filed within a specified time period and that it be accompanied by a certificate of good faith by a counsel of record." *United States v. State of Alabama,* 828 F. 2d at 1540. "If an affidavit is timely and technically correct, the trial judge may not pass upon the truthfulness of the facts stated in the affidavit even when the court knows these allegations to be false." *Id.*; *see also Christo,* 223 F. 3d at 1333 ("Properly pleaded facts in a § 144 affidavit must be considered as true.") "The statute restricts the trial judge to determining whether the facts alleged are legally sufficient to require recusal." *United States v. State of Alabama,* 828 F. 2d at 1540. "The test for legal sufficiency adopted by this Court requires a party to show: 1. The facts are material and stated with particularity; 2. The facts are such that, if true they would convince a reasonable person that a bias exists; 3. The facts show that the bias is personal, as opposed to judicial, in nature." *Id.*; *Young v. Smith*, 2015 WL 1541686, at *1 (S.D. Ga. Mar. 31, 2015) (same). Therefore, "(b)efore a judge recuses herself, a § 144 affidavit must be 'strictly scrutinized for form, timeliness, and sufficiency.'" *United States v. Perkins,* 787 F. 3d 1329, 1343 (11th Cir. 2015) (quoting *United States v. Womack,* 454 F. 2d

1337, 1341 (5th Cir. 1972));[4] *Young,* 2015 WL 1541686, at *1 ("Because the statute 'is heavily weighted in favor of recusal,' [the] requirements are to be strictly construed to prevent abuse.") (citation omitted).

As to form, Coble submits a notarized affidavit wherein he states the facts supporting his belief that personal bias or prejudice exists (doc. 70-1). Coble is proceeding *pro se.* (doc. 70-1, p. 8). His affidavit is not accompanied by a certificate of counsel of record stating that it is made in good faith. Therefore, it does not meet the procedural requirements of § 144. *See United States v. Perkins,* 787 F.3d at 1343 (finding that the district court did not abuse its discretion in denying Perkins' *pro se* motion pursuant to 28 U.S.C. § 144 because his affidavit "did not meet the procedural requirements of § 144 because it was not accompanied by a good-faith certificate from his appointed counsel of record" without discussion of the other procedural requirements); *Guthrie v. Wells Fargo Home Mortgage. NA*, 2015 WL 1401660, at *2 (N.D. Ga. Mar. 26, 2015) ("In light of the mandatory and automatic nature of recusal under the statute, its potential for abuse, and the availability of other statutory mechanisms pursuant to which an unrepresented litigant may seek the recusal of a federal judge, the absence of such a certificate has proven fatal to even the § 144 motions of *pro se* litigants.") (collecting cases); *Odouk v. St. Leo University,* 2011 WL 13176106, *4 (N.D. Ga. Feb. 28, 2011) (same) (quoting *Clark v. Deal,* 2009 WL 4899425, *2 (N.D. Ga. Dec. 11, 2009)).

With respect to timeliness, the motion "must be made at counsel's first opportunity after discovery of the disqualifying facts." *Lopez v. United States*, 2017 WL 1205565, at *1 (S.D. Fla. Feb. 8, 2017). According to Coble, he first became aware of the Court's alleged personal bias

---

[4] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent in this Court decisions that the former Fifth Circuit Court of Appeals issued prior to October 1, 1981).

against him at the change of plea hearing held on February 19, 2016 (doc. 70-1, p. 1-2). Coble attests that the Court stated that it would "'from time to time' … put people, defendants, sex offenders in danger of physical harm" and that by making this statement in court, the Court "slipped up and exhibited her bias towards sex offenders" (Id., at p. 2).

Coble did not file his motion and affidavit pursuant to 28 U.S.C. § 144 until twenty-two months later on December 5, 2017. At that time, Coble had been sentenced[5] and had filed his pending motion to vacate. Coble made no showing as to good cause for the delay. *See Nichols v. Volunteers of America,* 2013 WL 12146126, *2 (N.D. Ala. Aug. 9, 2013) (finding the motions to recuse filed July 30, 2013 were untimely under a reasonable diligence standard where the movants waited more than ten months after September 28, 2012 when they became "aware of the statements that allegedly reflect this court's bias".); *Elso v. United States*, 2010 WL 5013875, at *4 (S.D. Fla. Dec. 3, 2010) ("Elso has not provided any reason, much less good cause, to show why he waited seven months to file the recusal motion after Judge Seitz lifted the stay in February 2010.").

Since these procedural requirements have not been met, relief under 28 U.S.C. § 144 is not available to Coble. *See Guthrie*, 2015 WL 1401660, at *2 ("Procedural deficiencies alone compel the denial of Plaintiffs motion under § 144.") (citation omitted). Therefore, Coble's motion is due to be denied.

III. Coble's motion pursuant to 28 U.S.C. § 455(a)

---

[5] Coble also attests that the Court made statements at his sentencing hearing on June 30, 2016, which demonstrated a personal bias against him. Specifically, the Court's statement that based on her seventeen years on the bench, she categorizes sex offenders into three categories and placed Coble in the third category and the statement that the Court believed Coble had a sickness (doc. 70-1, p. 2; p. 3-4). Thus, Coble was aware of the alleged bias on June 30, 2016, but did not file his motion and affidavit until seventeen months later in December 2017.

7

Coble also brings his motion pursuant to 28 U.S.C. § 455(a), which states, in relevant part, that "[j]udges must also recuse themselves when their 'impartiality might reasonably be questioned.'" *Klayman,* 605 Fed. Appx. at 748. Section 455(a) "relieves litigants of the strict procedural predicates mandated by § 144" and "does not invite recusal whenever it is requested by a party." *Guthrie*, 2015 WL 1401660, at *3. "In contrast to relief under § 144, relief under § 455 does not require an affidavit. Recusal is appropriate if 'an objective, disinterested, lay observer fully informed of the facts ... would entertain a significant doubt about the judge's impartiality.'" *Dae Eek Cho v. United States*, 687 Fed. Appx. at 839-840; *United States v. Patti*, 337 F. 3d 1317, 1321 (11th Cir. 2003) (same); *Imperato v. Navigators Ins. Co.*, 681 Fed. Appx. 743, 746 (11th Cir. 2017) ("the movant must show 'an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality.'") (quoting *Christo*, 223 F.3d at 1333)); *Taylor-Tillotson v. Commissioner of Soc. Sec.*, 696 Fed. Appx. 972, 976 (11th Cir. 2017) (same). Coble did not specifically cite to 28 U.S.C. § 455(b)(1), which provides in relevant part, that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party." But Coble did argue that the Court was personally biased against him. The same objective standard applies to § 455(b)(1) as with § 455(a). *Laster v. City of Tampa Police Dep't*, 575 Fed. Appx. 869, 873 (11th Cir. 2014)

The "'general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources,' unless 'a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party.'" *Imperato*, 681 Fed. Appx. at 746 (quoting *In re Walker*, 532 F.3d 1304, 1310–11 (11th Cir. 2008) (per curiam)). "If . . . the alleged bias arises from the judge's remarks or opinions during the course of judicial proceedings . . . the party moving for disqualification must clear a much higher hurdle. The opinions formed

by a judge on the basis of facts introduced or events occurring during judicial proceedings are not a basis for a bias or partiality challenge unless they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Klayman,* 650 Fed. Appx. at 748 (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147 (1994)).

Overall, there must be some factual basis to support an allegation of partiality; therefore, "'recusal cannot be based on unsupported, irrational or highly tenuous speculation.'" *Imperato*, 681 Fed. Appx. at 746 (quoting *United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) (per curiam)). Additionally, adverse rulings generally do not demonstrate pervasive bias. *See Dae Eek Cho v. United States*, 687 Fed. Appx. at 840 ("'Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias.'").

Coble argues that the Court has an actual "personal bias stemming from extrajudicial sources" (doc. 70, p. 2). Coble attests that "extrajudicial influences inflicted upon" the Court by television news reports, news articles, religious sermons, and social media, all of which condemn sex offenders, have enraged the Court's "Matriarchal instincts" and "Maternal emotions" to the point of acting with personal bias toward him (doc. 70-1, p. 5, 6).[6] Coble asserts that this personal bias caused the Court to become angry when made aware of his initial low guideline

---

[6] The Court has liberally construed Coble's motion and affidavit as providing argument in support of his § 455 motion. *See Gooden v. United States*, 627 F.3d 846, 847 (11th Cir. 2010) ("Federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework.") (internal quotation marks and citation omitted).

range and then to formulate a plan[7] to destroy his chance of getting less than the maximum penalty (doc. 70-1, p. 2, 5).

Coble's belief that the Court's "matriarchal instincts" and "maternal emotions" have been inflamed by extrajudicial sources is not supported by any facts that would convince a "reasonable person that bias actually exists.'" *Klayman*, 605 Fed. Appx. at 748. His belief that the Court has actually viewed these extrajudicial sources and then reacted to them as he describes, is nothing more than "unsupported, irrational or highly tenuous speculation." *Imperato*, 681 Fed. Appx. at 746. Coble does not attest to a factual basis from which an "objective, disinterested lay observer full informed of the facts" could form "significant doubt" regarding the Court's impartiality. *Dae Eek Cho v. United States*, 687 Fed. Appx. at 840.

Coble also argues that the Court's remarks or statements in open court show a pervasive bias and prejudice against him. Coble relies upon certain statements made at the change of plea hearing and the sentencing hearing. With respect to the former, Coble asserts that "within the first three (3) minutes of [his] plea hearing" the undersigned "slipped up and exhibited her bias towards sex offenders" by stating that she would "sometimes" put sex offenders in danger of physical harm (Doc. 70-1, p. 9).

---

[7] Coble believes that after the Court reviewed the Probation Officer's Report and the Certification of the Guidelines Calculation, the Court formulated a plan for him to receive the maximum sentence instead of a sentence in the lower sentencing guidelines range as indicated in those documents (doc. 70-1, p. 2, 4-5). He believes that the Court waited until after he entered a plea of guilty and signed a plea agreement, which was based on his expectation of a sentencing guidelines range of 108 to 135 months, to introduce "her own agenda to … lengthen the sentence of a sex offender" (Id., p. 2). According to Coble, the Court was "mad" because his sentencing guidelines range was low and therefore "cross–referenced" his guideline provisions "*sua sponte*", which resulted in the maximum penalty of 240 months (Id., p. 4-5). Coble believes the Court held the "in camera conclave" to "pressure the attorneys … in order to finalize her plan of rendering the maximum penalty." (Id).

10

Preceding this statement, defense counsel had asked the Court to hear the statement of facts from the factual resume at sidebar because potential witnesses were present (doc. 62, p. 2). The Court responded: "The factual resume is a public document" and "This should be a public case", and then asked defense counsel whom in the courtroom was he concerned about. (Id., p. 2-3) Defense counsel responded that a victim's mother was present. (Id., p. 3). The Court then explained: "I think it's part of the victim's right to be able to hear what's going on. I mean, I don't want to put him in danger. Sometimes, I'll do that." (Id.) Defense counsel then stated that he did not think there was a threat of danger to Coble. (Id.) The Court responded: "Well if there's no threat of danger, we'll do it publicly." (Id.) The factual resume was taken in open court.

Taken in context, the phrase "sometimes I'll do that" referred to holding a side bar, meaning "sometimes" the Court would "do [a side bar for hearing the factual resume]", if there was a threat of danger to the defendant (Id., p. 3). Had there been a threat of danger to Coble, the Court would have heard the factual resume at sidebar. In other words, the Court would <u>not</u> have put him in danger. The Court's statements do not "display a deep-seated … antagonism" toward Coble that "would make fair judgment impossible." *Klayman*, 650 Fed. Appx. at 748.

With respect to the sentencing hearing, Coble points to the Court's statements that she "categorizes" sex offenders into three categories based on her seventeen years on the bench and that Coble has a "sickness" from which the Court must protect the public (doc. 62, p. 2-3; p. 19-20). Coble asserts that the Court "uses her matriarchal instincts and her naturally given maternal emotions to biasly categorize and label (mentally, in her own mind) sex – offenders" (doc. 70-1, p. 2). Coble asserts the Court's "point of view as the public's own appointed protector is askew and is most prejudicial and bias[ed] in its nature" against him and is "based on her expert medical evaluation of [his] alleged and unverified sickness" (doc. 70-1, p. 4). He asserts that the

11

Court should protect the public from "further crimes of the defendant" as stated in 18 U.S.C. § 3553(a)(2)(C), instead of punishing him because she believes he has a sickness (Id.).

At sentencing, Coble moved for a downward variance. These statements were made when the Court was deciding whether to grant his motion (doc. 63, p. 19-20). Among several factors, the Court considered the seriousness of Coble's offense and stated as follows:

> Next, I'm to consider the seriousness of the offense. I've been having case like this for the last 17 years, and I usually put these in three different categories. I have people who look at child pornography, but there's no evidence of anything else, which I usually do depart downward for that type of person. And then I have the people who have engaged in looking at child pornography and making child pornography. And then I have a third category of people that I don't see very much but look at child pornography and then abuse their own children. And this is in the category that I have today. With his statement that he's not a sex offender, it was just a one-time mistake that he made, it's hard for me to wrap my mind around that because when you are talking about abusing your own children in such a manner -- and while I understand that he got off track with his Christian faith -- this lends itself to be more of a sickness, a sickness which I have to protect the public from.

(Doc. 63, p. 19-20). The Court denied Coble's request. (Id., p. 20).

The Court's statements represent opinions formed on basis of facts that Coble admitted in the factual resume and Coble's statement that he is not a sex offender, i.e., facts introduced during this judicial proceeding. In that context, the Court's opinions "are not a basis for a bias or partiality challenge unless they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Klayman*, 650 Fed. Appx. at 748. However, the statements indicate that the Court was doing what it should – relying upon her seventeen years of experience on the bench and "drawing conclusions based on the facts presented during the course of proceedings" in order to render decisions. *Miccosukee Tribe of Indians of Florida v. Cypress,* 56 F. Supp. 3d

1324, 1330 (S.D. Fla. 2014) (citing *Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147 (1993)). The Court's statements or opinions do not display a deep-seated antagonism toward Coble that would make fair judgment impossible. *Klayman*, 650 Fed. Appx. at 748.

With respect to application of the Sentencing Guidelines, Coble argues that the Court "sua sponte" applied the cross-reference provision found in U.S.S.G. § 2G2.2(c)(1), which resulted in the application of U.S.S.G. § 2G2.1, an increase in Coble's total offense level, and a consequent increase in his sentencing guidelines range. Coble believes that this "sua sponte" application was caused by the Court's alleged personal bias against him, and that in "haste to put the categorized and labeled sex offender away for as long as the law would possibly allow, started her statement of reasons with the guideline range not once, but twice" (doc. 70-1, p. 3). Coble also asserts that that by making the Guidelines the "starting point", the Court has "in fact made the Guidelines a mandatory factor in the imposing of a sentence" which violates fundamental fairness and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, (2005).

Coble is mistaken. The Court is obligated to correctly calculate the sentencing guidelines range by making an individualized assessment based upon the facts presented. In *Gall v. United States*, the Supreme Court explained that

> … a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable…. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently

> compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

552 U.S. 38, 49–50, 128 S. Ct. 586, 596–97 (2007) (citations omitted); *see also United States v. Fowler*, 749 F.3d 1010, 1021 (11th Cir. 2014) ("Even under the current advisory guidelines system, modified as it was by the decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), district courts are required to correctly calculate the guidelines range, both initially and upon resentencing, and to use that range as 'the starting point and the initial benchmark' for their sentencing decisions.") (citing *Peugh v. United States,* 569 U.S. 530, 537. 133 S. Ct. 2072, 2080 (2013) (quotation marks omitted))

Moreover, Coble objected to the application of the cross-reference and his objection was overruled. Generally, the Court's adverse rulings do not demonstrate pervasive bias. *See Dae Eek Cho v. United States*, 687 Fed. Appx. at 840. The Court's opinion, i.e., the decision to over-rule Coble's objections and apply the cross reference, was based on facts that Coble admitted in the factual resume. The decision did not come from an "extrajudicial source" and was not based on something other than "what the [Court] learned from [her] participation in the case." *Jaffe v. Grant*, 793 F. 2d 1182, 1188-1189 (11th Cir. 1986). Again, the Court was doing what it should by "drawing conclusions based on the facts presented during the course of proceedings" in order to correctly calculate the sentencing guidelines. *Miccosukee Tribe of Indians of Florida,* 56 F. Supp. 3d at 1330 (S.D. Fla. 2014) (citing *Liteky,* 510 U.S. at 551, 114 S. Ct. 1147 (1993)); *see also Frazier v. United States,* 2017 WL 1364976, *10 (N.D. Ala. Apr. 14, 2017) ("Moreover, the court could have applied U.S.S.G. § 2G2.1 to determine Petitioner's base offense level based on

his stipulations to the court without applying the cross-reference in U.S.S.G. § 2G2.2. Under the Sentencing Guidelines, "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." U.S.S.G. § 1B1.2(c). Petitioner's admissions that he had produced videos of minors 'in various stages of undress in their bedrooms and bathrooms while they were changing clothes or preparing to enter the shower' and had sent them to his co-defendant were admissions of using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction."). Again, Coble cannot clear the higher hurdle of showing a deep-seated antagonism toward him that would make a fair decision impossible. *Klayman*, 650 Fed. Appx. at 748

As further grounds for disqualification, Coble argues that the Court created the appearance of bias, which requires recusal under § 455(a), by convening an "in camera conclave or secret meeting sua sponte" with counsel but without Coble present (doc. 70). He believes that during this conference, the Court pressured the attorneys "in order to finalize her plan of rendering the maximum penalty" (doc. 70-1, p. 4-5).

Coble first argues that convening the conference was a violation of Rule 32(i)(4)(C) of the Rules of Criminal Procedure (doc. 70). Rule 32 applies to "Sentencing and Judgment". Subparagraph (i)(4) (C) provides for "In Camera Proceedings" and states that "[u]pon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4)."[8] Coble reasons that because the Court is not a "party", holding the conference violated

---

[8] Subparagraph (i)(4)(A) provides that at sentencing, the Court must give the defense attorney the "opportunity to speak on the defendant's behalf", "address the defendant personally in order to permit the defendant to speak or present" mitigating information and allow the government an equivalent opportunity to speak. Subparagraph (B) provides for the victim to be heard.

15

the Rule and created the appearance of bias against him. (Doc. 70-1, p. 5.) Coble is mistaken. Nothing in the Rule prohibits the Court from holding an in camera conference and the Court does not insert itself as party by so doing. Instead, the Rule simply explains that a party may move for in camera hearing of statements at sentencing upon a showing of good cause. No "objective, disinterested lay observer fully informed of the facts" could form significant doubts regarding the Court's impartiality, based on this alleged violation of Rule 32. *Dae Eek Cho v. United States*, 687 Fed. Appx. at 840.

Coble also asserts that the Court violated 18 U.S.C. § 3553(c)(2) by not stating on the record that statements were received in camera and that the Court relied upon the contents of the statements at sentencing (doc. 70-1, p. 5). Coble states that "no one can exactly say what was said in DuBose's conclave, however, it can be shown that when it was convened Affiant "<u>HAD</u>" an Agreement in place for 108-135 months of incarceration and <u>after</u> it was concluded, Affiant received the maximum penalty allowed by law, without the benefit of a Trial." (Doc. 70-1, p. 5) (emphasis in original).[9]

Subparagraph (c) provides for a statement of reasons for imposing a sentence and states that the Court, "at the time of sentencing, shall state in open court the reasons for its imposition of a particular sentence". 18 U.S.C. § 3553(c). If certain requirements are met, subparagraph

---

[9] As a specific term of the Plea Agreement, Coble agreed as follows: "The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation." (Doc. 23, p. 4, ¶ 12). Coble also agreed that he understood "that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and full understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court." (Doc. 23, p. 4, ¶ 13).

(c)(2), in relevant part, states that "[i]n the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements." 18 U.S.C. § 3553(c)(2). Assuming for purpose of this argument only that the requirements of Subparagraph (c)(2) are met and it could apply to Coble's sentencing, his argument is misplaced. After the Court held the in camera conference with counsel, Coble's sentencing hearing was continued. The Court stated on the record as follows:

> The Court: Okay. We're here for the United States versus Jeffrey Dean Coble. And upon review of the presentence investigation, I have determined that the guidelines have been incorrectly calculated. There is information that I have and that was admitted to in the factual resume that has not been included. And the law requires that if any changes like that that are made to the presentence investigation are made by the Court, that I must give notice to the defense and the defense must have at least 14 days to object to it when it affects the calculations, and which in this case it would affect the calculations to be higher than what they are in the guidelines. And I want to apologize to the people who have come here today, but I am going to ask that the guidelines be recalculated. I'm giving notice to the defense that that's going to occur, and we will reschedule this for June 30th at 9 o'clock.

(Doc. 67, p. 2).

The statements at the in camera conference were not part of his sentencing; and therefore, the Court did not rely upon any statements received from counsel at the in camera conference to sentence Coble. Thus, the Court had no obligation to include in its statement of reasons that the in camera statements were received or that the court relied upon the contents in imposing a sentence. Again, no "objective, disinterested lay observer fully informed of the facts" could form significant doubts regarding the Court's impartiality based on this alleged violation of Rule 32 and 18 U.S.C. § 3553(c)(2). *Dae Eek Cho v. United States*, 687 Fed. Appx. at 840.

IV. <u>Rule 4 of the Rules Govering Section 2255 Proceedings</u>

Coble also acknowledges the "long-standing majority practice in assigning" § 2255 motions to the district judge who presided over the action as set forth in Rule 4 of the Rules Governing Section 2255 Proceedings.  However, Coble argues that when the district judge "may have become so involved with the decision that it would be difficult for him or her to review it objectively", nothing in the legislative history of Rule 4 requires that district judge to preside, and the "advantages of section 2255 can all be achieved if the case is heard in the sentencing district, regardless of which judge hears it." (Doc. 70, p. 3). As discussed herein, nothing before the Court indicates actual bias such that the Court could not objectively review the § 2255 motion, or the appearance of bias such that recusal would be required.

**DONE** and **ORDERED** this the 26th day of January 2018.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**